CHIP STEAK, INC., et al., Plaintiffs,

v.

Clifford HARDIN, Secretary of Agriculture, et al., Defendants.

No. 71 49.

United States District Court,
N. D. California.

Jan. 30, 1973.

George A. McKray, San Francisco, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., and Brian B. Denton, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is an action by Chip Steak Inc. ("Chip Steak"), a California meat processing firm, and Vao L. Cheney, president of Chip Steak, involving two separate claims against officials of the United States Department of Agriculture ("USDA").

Under their first claim, plaintiffs seek a permanent injunction preventing USDA officials from taking samples of Chip Steak products without payment in the course of inspections conducted at Chip Steak's plant, and, a declaratory judgment holding void and unenforceable USDA regulation 9 CFR 318.9, which provides, in effect, that USDA meat inspectors can take samples of meat products in the course of inspection without payment.

Second, plaintiffs seek a mandatory injunction compelling USDA officials to "retest" Chip Steak products that have been administratively detained by USDA under 21 U.S.C. § 672 on suspicion of having excessive fat content ' if the USDA's laboratory test results, showing excessive fat content, are contradicted by Chip Steak's own laboratory test results.

This action originally came before the court for hearing on plaintiffs' motion for a preliminary injunction. The initial hearing on that motion revealed only minor factual issues and no substantial claim of irreparable damage. We therefore continued the hearing on the preliminary injunction, and, invoking F.R.Civ.P. 65(a)(2), advanced trial on the merits to be consolidated with that hearing.

At trial, both parties submitted evidence by oral testimony and affidavits.[1] The action is therefore ready for final adjudication on the merits of plaintiffs' two claims, which we shall consider separately.

## PAYMENT FOR SAMPLES ISSUE

Plaintiff Chip Steak is a California corporation in the business of manufacturing processed meat food products at its plant in Oakland, California. The record shows that Chip Steak conducts business by buying boned meat from slaughterers or wholesalers, which it then cuts, grinds, prepares and otherwise processes, freezes and packages into small portions, and then sells to meat food product wholesalers for distribution in the retail market.

The Federal Meat Inspection Act requires, in Subchapter I, that, prior to entering Chip Steak's plant, the meat used by it to prepare its meat food products must have undergone USDA ante-mortem and post-mortem inspection to insure that the meat is not "adulterated" within the meaning of the Act and the regulations promulgated thereunder.[2]

In addition to the foregoing inspections, Subchapter I of the Act also requires, in 21 U.S.C. § 606, that meat food products, such as those prepared by Chip Steak, must themselves undergo

---

1. Upon stipulation of the parties, the affidavits and other evidentiary materials filed in connection with plaintiffs' motion for a preliminary injunction were admitted in evidence at trial.

2. 21 U.S.C. § 603 provides, in pertinent part, that "For the purpose of preventing the use in commerce of meat and meat food products which are adulterated, the Secretary shall cause to be made, by

USDA inspection at Chip Steak's plant to insure that these meat food products are not "adulterated" within the meaning of the Act and USDA regulations. That provision, which has remained substantially unchanged since its enactment in 1907,[3] provides, in pertinent part, as follows:

"For the purposes hereinbefore set forth the Secretary shall cause to be made, by inspectors appointed for that purpose, an examination and inspection of all meat food products prepared for commerce in any slaughtering, meat-canning, salting, packing, rendering, or similar establishment, and for the purposes of any examination and inspection said inspectors shall have access at all times, by day or night, whether the establishment be operated or not, to every part of said establishment; and said inspectors shall mark, stamp, tag, or label as 'Inspected and passed' all such products found to be not adulterated; and said inspectors shall label, mark, stamp, or tag as 'Inspected and condemned' all such products found adulterated, . . . ."

The record shows that it has been the USDA's long standing practice to take samples of meat food products without payment for purposes of conducting the inspection required under 21 U.S.C. § 606, supra. (McEnroe Affidavit, filed December 14, 1971). This practice has been formalized in USDA regulation 9 CFR 318.9, providing that:

"Samples of products, water, dyes, chemicals, preservatives, spices, or other articles in any official establishment shall be taken, without cost to the [Meat Inspection Program of USDA's Consumer and Marketing Service], for examination, as often as may be deemed necessary for the efficient conduct of the inspection."

In 1967, Congress amended the Federal Meat Inspection Act in several respects, including the addition of a new provision in Subchapter II of the Act, 21 U.S.C. § 642(a), which provides, in effect, that the specified categories of meat businesses set forth therein must maintain accurate records reflecting their business dealings, and, that the USDA has the authority to inspect the facilities, records and inventory of such businesses, and, " . . . to take reasonable samples of their inventory upon payment . . . therefor."[4]

---

inspectors appointed for that purpose, an examination and inspection of all cattle, sheep, swine, goats, horses, mules, and other equines before they shall be allowed to enter into any slaughtering, packing, meat-canning, rendering, or similar establishment, in which they are to be slaughtered and the meat and meat food products thereof are to be used in commerce; . . . ."

21 U.S.C. § 604 provides, in pertinent part, that "For the purposes set forth in section 603 of this title the Secretary shall cause to be made by inspectors appointed for that purpose a post mortem examination and inspection of the carcasses and parts thereof of all cattle, sheep, swine, goats, horses, mules, and other equines to be prepared at any slaughtering, meat-canning, salting, packing, rendering, or similar establishment . . . as articles of commerce which are capable of use as human food; and the carcasses and parts thereof of all such animals found to be not adulterated shall be marked, stamped, tagged or labeled as 'Inspected and passed'; and said inspectors shall label, mark, stamp, or tag as 'Inspected and condemned' all carcasses and parts thereof of animals found to be adulterated; . . . ."

21 U.S.C. § 605 provides, in pertinent part, that "The foregoing provisions shall apply to all carcasses or parts of carcasses of cattle, sheep, swine, goats, horses, mules, and other equines, or the meat or meat products thereof which may be brought into any slaughtering, meat-canning, salting, packing, rendering, or similar establishment, and such examination and inspection shall be had before the said carcasses or parts thereof shall be allowed to enter into any department wherein the same are to be treated and prepared for meat food products; . . . ."

3. See, Historical Note to 21 U.S.C. § 606.

4. 21 U.S.C. § 642(a), in its entirety, provides as follows:

"(a) The following classes of persons, firms, and corporations shall keep such records as will fully and correctly dis-

The USDA has implemented the new authority to conduct inspections provided in this provision in regulation 9 CFR 320.4, which almost verbatim adopts the language contained in the statute.[5]

The record here shows that on January 19, 1971, a USDA meat inspector assigned to Chip Steak's plant for the purpose of conducting the inspection required under 21 U.S.C. § 606, supra, took some samples of a Chip Steak product known as "Randy's Buttered Beef Steaks" in the course of such an inspection. (See, Cheney Affidavit, filed October 15, 1971). When the samples were taken, the product was still on the production line and had not yet been marked with an official inspection legend indicating that it had been "inspected and passed" pursuant to 21 U.S.C. § 606, supra. (See Trial Transcript, pp. 59 and 75). The purpose of the sampling was to determine whether the fat content of the product was such so as to render it adulterated within the mean-

ing of USDA regulations. (Cheney Affidavit, supra).

Some time after the above occurrence, plaintiff Cheney made a formal demand that the USDA pay the fair market value of these samples, alleged to be somewhere in excess of one dollar, on the grounds that such payment was required under 21 U.S.C. § 642(a), supra. (Id.) The USDA, through its Regional Director of the Consumer and Marketing Service, E. M. Christopherson, responded by letter to the effect that it would not pay for the samples in question and would continue to take samples of Chip Steak products "in the usual manner." (Id.)

At trial, plaintiff Cheney testified that Chip Steak processes an average of 230,000 pounds of meat per month, resulting in annual gross sales of approximately $2,000,000. He testified further that USDA inspectors, in conducting inspections at Chip Steak's plant, take as samples approximately ten to fifteen

close all transactions involved in their businesses; and all persons, firms, and corporations subject to such requirements shall, at all reasonable times, upon notice by a duly authorized representative of the Secretary, afford such representative access to their places of business and opportunity to examine the facilities, inventory, and records thereof, to copy all such records, and to take reasonable samples of their inventory upon payment of the fair market value therefor—

(1) Any persons, firms, or corporations that engage, for commerce, in the business of slaughtering any cattle, sheep, swine, goats, horses, mules, or other equines, or preparing, freezing, packaging, or labeling any carcasses, or parts or products of carcasses, of any such animals, for use as human food or animal food;

(2) Any persons, firms, or corporations that engage in the business of buying or selling (as meat brokers, wholesalers or otherwise), or transporting in commerce, or storing in or for commerce, or importing, any carcasses, or parts or products of carcasses, of any such animals;

(3) Any persons, firms, or corporations that engage in business, in or for com-

merce, as renderers, or engage in the business of buying, selling, or transporting, in commerce, or importing, any dead, dying, disabled, or diseased cattle, sheep, swine, goats, horses, mules, or other equines, or parts of the carcasses of any such animals that died otherwise than by slaughter."

5. Regulation 9 CFR 320.4 provides as follows:

"Every person (including every firm or corporation) within any of the classes specified in § 320.1 shall upon the presentation of official credentials by any duly authorized representative of the Secretary, during ordinary business hours, permit such representative to enter his or its place of business and examine the records required to be kept by § 320.1 and the facilities and inventory pertaining to the business of such person subject to the Act, and to copy all such records and to take reasonable samples of the inventory upon payment of the fair market value therefor. Any necessary facilities (other than reproduction equipment) for such examination and copy of records and for such examination and sampling of inventory shall be afforded to such authorized representative of the Secretary."

pounds (valued at $10) of Chip Steak's products per month.

On the basis of the foregoing record, plaintiffs contend that the USDA's practice of taking samples without payment and the regulation, 9 CFR 318.9, supra, allowing such taking without payment, are unlawful and in conflict with the following language contained in 21 U.S. C. § 642, supra:

" . . . and to take reasonable samples of their inventory upon payment of the fair market value therefor—"

Plaintiffs contend that the above language requires the USDA to pay for all samples taken in the course of USDA inspections conducted at the Chip Steak plant. They make the further contention that regulation 9 CFR 318.9 is unconstitutional.

Plaintiffs admit, however, that their purpose in seeking to compel payment for samples taken by USDA is "not financial at all" and that "Chip Steak Co. might well turn down offer of payment for samples;" they indicate that their reason for pressing the issue is to obtain records of and receipts for samples taken by USDA in the course of inspection, implying that such record keeping would serve as a deterrent to the bribery of USDA meat inspectors. (See, Plaintiffs' Reply Memorandum, filed December 30, 1971, at p. 4.) [6]

Defendants contend, in opposition, that the language in 21 U.S.C. § 642, relied upon by plaintiffs, does not apply to samples taken in the course of inspections conducted under 21 U.S.C. § 606, nor to other inspections authorized under Subchapter I of the Act for the purpose of preventing adulterated meat from entering commerce. They take the position that Congress enacted § 642, not to change any existing practice of the USDA under § 606, but to give the

USDA new and broader authority, in addition to that conferred under the provisions in Subchapter I of the Act, to require accurate record keeping by a broad spectrum of regulated meat businesses, and to permit USDA inspection of the facilities, records, and inventory, and sampling of the inventory, of such businesses, in furtherance of that purpose. The requirement of payment for samples contained in § 642, defendants contend, applies only to samples of "inventory" taken in the course of inspections under § 642.

The issue presented here is essentially one of statutory construction: whether Congress, in enacting § 642, intended the language contained therein requiring payment for samples of "inventory" to apply to USDA sampling of meat food products in the course of inspections under 21 U.S.C. § 606.

We begin our discussion of this question by noting again that it has been the long standing practice of the USDA to take samples of meat food products without payment in the course of inspections conducted under authority of 21 U.S.C. § 606; USDA, in promulgating 9 CFR 318.9, supra, has interpreted the language of § 642 requiring payment for samples of "inventory" as *not* being applicable to samples of products taken during inspections conducted under 21 U.S.C. § 606. This is significant. As noted by one authority in the field of administrative law, ". . . courts give extra authoritative weight to interpretative rules and practices which . . . have been consistently followed over a long period." See, Davis, Admin. Law Treatise, § 5.06 at p. 324 (1958).

Furthermore, we have here a situation where, if plaintiffs are correct in their contention that § 642 requires payment for samples of products taken during inspections under § 606, the result would be to require the USDA to bear the cu-

---

6. The issue of whether the USDA should be required to give receipts for samples taken is not before this court. However, without determining whether there is any such legal requirement, it seems reason-

able to expect that the USDA would, at least as a matter of courtesy and good practice, give notice of and receipts for samples taken in the course of inspection.

mulative expense of paying for all samples taken in the course of routine inspections at all establishments subject to § 606 of the Act. Given this possible result, it is surprising that the legislative history of the 1967 Amendment to the Federal Meat Inspection Act adding 21 U.S.C. § 642, is silent and shows no debate or comment upon the meaning or application of the language in § 642 requiring payment for samples of "inventory." It is also significant that Congress has never appropriated any funds in the USDA's budget for payment of samples taken in the course of inspections under 21 U.S.C. § 606. (See Affidavit of Christopherson, filed November 9, 1971).

Although the foregoing circumstances are by no means conclusive, they do suggest that Congress did not envision § 642 as having the broad application that plaintiffs seek to attribute to it.

Obvious differences in the nature of the respective inspections authorized under the two provisions in issue, 21 U.S.C. §§ 606 and 642, pointed out by defendants, lend further support to the conclusion that Congress, in enacting § 642, did not intend the payment requirement in § 642 to apply to inspections conducted under authority of § 606.

Section 606, when read together with related provisions contained in Subchapter I of the Act (e. g., §§ 603, 604 and 605, supra, at n. 2), is clearly part of a regulatory scheme, contained in Subchapter I, intended by Congress to prevent the use in commerce of adulterated meat food products. That provision is couched in mandatory terms and in effect imposes a duty upon the USDA to provide inspections for adulteration:

> "For the purposes hereinbefore set forth the Secretary *shall cause to be made* by inspectors appointed for that purpose, an examination and inspection of all meat food products . . ." (Emphasis added.) 21 U.S.C. § 606.

These inspections are to be carried out by "inspectors" appointed by the Secretary of Agriculture for that specific purpose. They can occur, without prior notice, " . . . at all times, by day or night, whether the establishment be operated or not . . ." 21 U.S.C. § 606.

A reading of § 642, on the other hand, suggests that its purpose is to insure accurate record keeping by the various meat enterprises encompassed by it. Section 642, unlike § 606, does not grant the authority to conduct inspections in mandatory terms. Also, inspections under § 642 are to be conducted by a "duly authorized representative of the Secretary," must be conducted on notice, and can be conducted only at "reasonable times."

In addition to the foregoing distinctions, inspections under sections 606 and 642 differ in that they are directed at different objects and apply to different, although overlapping, phases of the meat business. Section 606 authorizes inspection of "meat food *products*" prepared in any "slaughtering, meat-canning, salting, packing, rendering, or similar establishment. . . ." Section 642, on the other hand, allows inspection of "facilities, inventory, and records" of a much broader segment of the meat industry. (Emphasis added.)

As indicated by defendants, the key to distinguishing inspections under sections 606 and 642 lies in the meaning of the term "inventory" as it is used in section 642.

The term "inventory" is defined neither in the statute nor in USDA regulations. We can reasonably assume, however, that Congress used the term having in mind its plain, ordinary meaning in the context of an on-going business: i. e., stock in trade available for sale in the ordinary course of business. See, generally, 48 C.J.S. at p. 756, citing Olson Equip. Co. v. Minneapolis, 285 Minn. 146, 171 N.W.2d 717, 718 (1969); Forrester v. Americus Oil Co., 66 Ga. App. 743, 19 S.E.2d 328, 330 (1942).

The Act, in 21 U.S.C. § 610(b) makes unlawful the sale or transportation, or

offer for sale or transportation, of meat food products unless they have been "inspected and passed" as not being adulterated under 21 U.S.C. § 606. Under the above meaning of the term, therefore, a meat food product cannot become "inventory" unless it has been so "inspected and passed."

■ It follows, therefore, that the requirement, contained in § 642, that USDA pay fair market value for samples of "inventory" does not apply to samples taken of meat food products that have not yet been "inspected and passed" under 21 U.S.C. § 606. Such an interpretation makes sense when one considers the task involved in attempting to assign a "fair market value" to samples of a product that has not yet been "inspected and passed" and is therefore not yet marketable.

As applied to Chip Steak, then, the requirement of payment for samples under § 642 covers only samples taken of Chip Steak products that have undergone inspection under 21 U.S.C. § 606, have been marked "inspected and passed" as not being adulterated, and are ready for release into commerce.

■■ We find, therefore, that 21 U.S.C. § 642 does not prevent the USDA from taking, without payment, reasonable samples of meat food products at Chip Steak's plant in the course of inspections conducted under 21 U.S.C. § 606 for the purpose of determining whether the products can properly be labeled "inspected and passed" as not being adulterated. We find also that regulation 9 CFR 318.9, insofar as it allows the USDA to take samples, without payment, under the foregoing circumstances, constitutes a reasonable interpretation by USDA of its statutory authority and is not unlawful.

Plaintiffs also make the general contention that regulation 9 CFR 318.9, supra, is unconstitutional. Although nowhere in the record before this court do plaintiffs set forth the precise basis for their claim of unconstitutionality, plaintiffs apparently contend that the USDA's taking of samples without payment constitutes a deprivation of property without due process of law.

Plaintiffs' admission, noted above, that their primary interest in litigating this issue is not "financial at all," and, that they might turn down payment for samples if offered, provides a questionable set of facts upon which to ask this court to declare unconstitutional a longstanding federal agency practice.

■ Assuming, however, that the issue is properly presented here, we nevertheless conclude that the USDA's taking, without payment, of reasonable samples of meat food products in the course of routine inspections authorized under 21 U.S.C. § 606, does not violate the due process clause, so long as the sampling is not excessive and is reasonably necessary for the conduct of such inspection.

Congress has found, in 21 U.S.C. § 602, that meat and food products are an important source of the Nation's food supply, that they are consumed throughout the Nation and the major portion thereof moves through interstate commerce, and that "it is essential in the public interest that the health and welfare of consumers be protected by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged." In furtherance of this purpose, Congress has enacted in Subchapter I of the Act a regulatory scheme requiring the USDA to conduct inspections of meat and meat food products before they are allowed to enter commerce.

There is no dispute here as to the constitutional power of the Government to require such inspection for the protection of the public health and safety.

■ We are of the opinion that the constitutional power of Government to require such inspections for the protection of the public health and safety reasonably implies the right to take samples of products without payment for purposes of conducting such inspections, so long as the quantity of samples taken is

not excessive and is reasonably necessary for the conduct of such inspection. If it were otherwise, the USDA's ability to perform its inspection duties, and, accordingly, its ability to protect the public from unwholesome and adulterated meat, would be contingent upon the size of its administrative budget.

There is no allegation here that USDA's sampling is excessive or unreasonable. In fact, the record here shows such an insignificant impact on Chip Steak's overall financial situation, that the taking involved here could be characterized as being de minimis. Requiring Chip Steak to yield samples of its products for inspection purposes is, in our view, no more a violation of due process than is the requirement, contained in USDA regulation 9 CFR 307.2, that Chip Steak provide, without reimbursement, light, tables, benches, receptacles, soaps, retention rooms, lockers for inspection tags, and other facilities for use by USDA inspectors.

Accordingly, plaintiffs' application for a permanent injunction and for a declaratory judgment holding regulation 9 CFR 318.9 to be void and unenforceable should be, and the same is hereby, denied.

## "RETESTING" ISSUE

The Federal Meat Inspection Act, in 21 U.S.C. § 672, authorizes the USDA to administratively detain meat food products that are reasonably believed to be adulterated. The record here shows that on September 1, 1970, USDA officials administratively detained approximately 747 pounds of plaintiffs' beef steaks on the grounds that USDA laboratory tests conducted on samples of the product indicated a fat content of 35%, the maximum permitted under USDA regulation 9 CFR 319.5(d) being 30%. Chip Steak later took its own samples of the detained product and conducted its own laboratory tests, which indicated that the product contained only 27% fat. The USDA later retested the product, found it to contain only 27.1% fat, and released it to Chip Steak.

On the basis of the foregoing record, plaintiffs ask this court to enter an order requiring the USDA to "retest" products that have been administratively detained by it under 21 U.S.C. § 672, where Chip Steak's laboratory test results as to the fat content of the product are in conflict with USDA test results.[7] Plaintiffs cite no statutory, regulatory or other authority in support of their demand, but argue simply that the imposition of such a requirement would prevent a multiplicity of lawsuits and would avoid unnecessary public embarrassment to Chip Steak resulting from unwarranted administrative detentions of its products.

■ It appears to us that plaintiffs' claim is moot by virtue of the fact that the USDA did in fact retest and release the detained meat here in question. Moreover, there is nothing in the record to show that the USDA, as a matter of policy, refuses to retest detained Chip Steak products if Chip Steak findings as to fat content are shown to be in conflict with USDA's findings. In fact, the record shows that, if a discrepancy in test results should arise, USDA does, under present USDA policy, allow Chip Steak to resample the detained product and to have the new samples tested at a USDA-approved laboratory. (Affidavit of Houston, filed January 27, 1972, at p. 4.)

■ Even assuming that USDA does, as a matter of policy, refuse to retest Chip Steak products that have been detained where Chip Steak's tests indicate a discrepancy as to fat content, plaintiffs still cannot prevail.

The record here shows that, whereas the official USDA test for fat content of

---

7. Plaintiffs originally contended that the USDA refused to allow plaintiffs to take samples of administratively detained products, but have now abandoned that contention, conceding that USDA now permits them to take such samples. (Plaintiffs' reply memorandum, filed December 30, 1971, at p. 1; see, also, affidavit of Cheney, filed December 30, 1971.)

**446**

products is by the so-called "alcohol" extraction process, Chip Steak utilizes and is relying in this case on tests conducted by the "Needham" or "heat extraction" process, which is not recognized by USDA as a valid test. (Trial Transcript, pp. 85–92). Given these circumstances, it is frivolous for plaintiffs to argue that, when their tests as to fat content contradict USDA's findings, the USDA should be required to retest the detained article.

Accordingly, it is the order of this court that:

(1) Plaintiffs' motion for an amendment of the complaint to conform to proof, filed February 28, 1972, should be, and the same is hereby, granted;

(2) Plaintiffs' application for a permanent injunction requiring the USDA to "retest" detained products under the circumstances outlined above should be, and the same is hereby, denied.